## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

| | |
|---|---|
| **PAUL ENGEL**, Individually And<br>On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>**MUNICIPAL MORTGAGE & EQUITY, LLC,**<br>**CHARLES M. PINCKNEY,**<br>**MELANIE M. LUNDQUIST,**<br>**MARK K. JOSEPH,**<br>**MICHAEL L. FALCONE,**<br>**MERRILL LYNCH, PIERCE, FENNER &**<br>**SMITH INC. and**<br>**RBC CAPITAL MARKETS CORP.**<br><br>Defendants | **CIVIL ACTION NO.**<br>**1:08-cv-00292 MJG**<br><br><br>**AMENDED**<br>**CLASS ACTION COMPLAINT**<br>**FOR VIOLATIONS OF**<br>**FEDERAL SECURITIES LAWS**<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This is a federal class action on behalf of purchasers of the common stock of Municipal Mortgage & Equity, LLC ("MuniMae" or the "Company") between **May 3, 2004** and **January 29, 2008,** inclusive (the "Class" or "Class Period"), including those who purchased shares in connection with the Company's February 3, 2005 Secondary Public Offering and through the Company's dividend reinvestment plan.  As alleged herein, defendants issued materially false and misleading registration statements, proxy statements, proxy-prospectuses, and other periodic filings with the Securities and Exchange Commission ("SEC") as well as public statements through press releases and statements reported in the press.  By virtue thereof, defendants are liable to members of the Class under Sections 11, 12(2) and 15 of the Securities

28714

Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act, Sections 77k and 77o, and rules promulgated thereunder by the Securities and Exchange Commission (the "SEC"), and Section 10(b) and 20(a) of the Exchange Act [15 U.S.C. Sections 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. Section 240.10b-5].

3.      Jurisdiction is conferred by § 22 of the Securities Act, 15 U.S.C. §77v, and §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1331.

4.      Venue is proper in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act and 28 U.S.C. § 1391(b), Section 1337 and Section 27 [15 U.S.C. Section 78aa].  Defendant MuniMae maintains its principal place of business within this District, and/or the individual defendants conduct business in, and many of the acts giving rise to the violations complained of herein, took place in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### Plaintiff

6.     Plaintiff, Paul Engel, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of MuniMae pursuant to a registration and prospectus during the Class Period and has been damaged thereby.

### Corporate & Individual Defendants

7.     Defendant **MUNICIPAL MORTGAGE & EQUITY, LLC,** is a corporation organized under the laws of the state of Delaware, that maintains its principal place of business at  621 E. Pratt Street, Suite 300, Baltimore, Maryland.  According to the Company's recent press releases, MuniMae and its subsidiaries arrange debt and equity financing for developers and owners of real estate and clean energy projects. The Company also provides investment management and advisory services for institutional investors, and its assets under management exceed $19 billion, including investments in approximately 3,000 multifamily properties, containing more than 323,000 units in 49 states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands.

8.     Defendant **MICHAEL L. FALCONE** ("Falcone") is, and during the Class Period was, Chief Executive Officer, President and a member of the Board of Directors of the Company.  Defendant Falcone succeeded defendant Mark Joseph to become CEO of the Company, on or about December 9, 2004.  During the Class Period, defendant Falcone signed and/or certified certain of the Company's Forms 10-Qs and Forms 10-Ks.

9.     Defendant **MARK K. JOSEPH** ("Joseph") was, during the Class Period, Chief Executive Officer and Chairman of the Board of Directors of the Company.  On or about December 9, 2004, defendant Joseph resigned as CEO, yet remained as Chairman of the Board

3

of Directors of the Company, throughout the Class Period. During the Class Period, defendant Joseph signed certain of the Company's SEC filings, including its annual Forms10-Ks.

10.     Defendant **MELANIE M. LUNDQUIST** ("Lundquist") is, and during the Class Period was, Chief Financial Officer and Executive Vice President of the Company, until she abruptly resigned from this position effective on or about July 16, 2007. During the Class Period, defendant Lundquist signed and/or certified certain of the Company's Forms 10-Qs and Forms 10-Ks.

11.     Defendant **CHARLES M. PINCKNEY** ("Pinckney") is, and during the Class Period was, Chief Operating Officer and interim Chief Financial Officer, following the July 16, 2007 resignation of defendant Lundquist. For a material amount of time during the Class Period, defendant Pinckney had access to, and control over, the Company's financial reporting and accounting; defendant Pinckney has been an officer of the Company since 2002.

12.     The defendants referenced above in ¶¶ 8 - 11 are referred to herein as the "Individual Defendants."

13.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and *via* reports and other information provided to them in connection therewith.

4

14.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.

15.     Each of the above officers of MuniMae, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.

16.     Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

17.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC, and was traded on the New York Stock Exchange (the "NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misstatements and omissions during the Class Period violated these specific requirements and obligations.

18.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein.  Because of their Board membership and/or executive and managerial positions with MuniMae, each of the Individual Defendants had access to the adverse undisclosed information about MuniMae's business prospects and financial condition and performance as particularized herein.

19.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

**Secondary Offering Underwriter Defendants**

20.     In connection with the February 2005 Secondary Public Offering, defendant **MERRILL LYNCH, PIERCE, FENNER & SMITH INC.** ("Merrill Lynch") and defendant **RBC CAPITAL MARKETS CORP.** ("RBC Capital", and collectively with Merrill Lynch, the "Underwriter Defendants"), acted as lead underwriters of the Secondary Offering – distributing millions of shares of MuniMae stock to investors.   Not including another 386,250 shares distributed upon exercise of the underwriters' over-subscription allotment option, the distribution of Secondary Offering shares awarded Underwriters and Underwriter Defendants occurred, as follows:

| UNDERWRITER | Number of Shares |
|---|---|
| Merrill Lynch, Pierce, Fenner & Smith Inc. | 1,158,750 |
| RBC Capital Markets Corp. | 1,158,750 |
| Banc of America Securities LLC * | 257,500 |
| * Non-Party | |
| Total | 2,575,000 |

21.     The Underwriter Defendants were paid almost $1.26 per share in connection with the sale of the 2.961 million shares, including shares sold pursuant to the exercise of the Underwriter's  Over-subscription Option – to realize gross proceeds of approximately $3.73 million, as follows:

| | Per Share | Without Option | With Option |
|---|---|---|---|
| Public offering price | $26.5100 | $68,263,250 | $78,502,738 |
| Underwriting discount | $1.2592 | $3,242,440 | $3,728,806 |
| Proceeds, before expenses, to MuniMae | $25.2508 | $65,020,810 | $74,773,932 |

22.     Shareholders were willing to, and did, pay these fees -- equal to at almost 5% of the gross sales price -- to compensate the Underwriter Defendants for conducting a purported significant due diligence investigation into MuniMae, prior to the Secondary Offering.   The Underwriter Defendants' due diligence investigation was a critical component of the Secondary Offering, and it was supposed to provide investors with important safeguards and protections.

23.     The due diligence investigation that was required by the Underwriter Defendants included a detailed investigation into MuniMae's accounting and assumptions that extended well beyond a mere casual review of MuniMae's accounting, financial report and operational and financial controls.   The failure of the Underwriter Defendants to conduct an adequate due

diligence investigation was a substantial contributing factor leading to the harm to those who purchased shares in the Secondary Offering, as complained of herein.

24.     In addition to the foregoing, because of the Underwriter Defendants' relationship with the Company, its officers and directors, they each had access to the adverse undisclosed information about MuniMae's business, operations, products, operational trends, financial statements, markets and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and *via* reports and other information provided to them in connection therewith.

25.     It is appropriate to treat the Underwriter Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of MuniMae between **May 3, 2004** and **January 29, 2008**, inclusive (the "Class") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MuniMae common shares were actively traded on the NYSE.  As of November 1, 2005, the Company had over 38.135 million shares of common stock issued and outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MuniMae or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MuniMae; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

32.     During the Class Period, defendants published a series of statements that they knew, or recklessly disregarded, were materially false and misleading at the time of publication, or that omitted to disclose material facts necessary to make such statements true, accurate and correct.  Evidence of such false and misleading statements include, in part, the Company's press releases and SEC filings during the Class Period.

33.     On May 3, 2004, defendants published a release announcing purported strong financial and operational results for the first quarter of 2004, the period ended March 31, 2004. This release stated, in part, the following:

**MuniMae Reports 2004 First Quarter Results of Operations; First Quarter Exceeds Expectations**

BALTIMORE--(BUSINESS WIRE)--May 3, 2004, Municipal Mortgage & Equity, LLC (NYSE:MMA), known as MuniMae, reported net income allocated to common shares of $1.2 million for the quarter ended March 31, 2004 compared to $13.9 million for the same period in 2003. Diluted earnings per share were $0.04 for the quarter, compared to $0.50 for the same period in 2003.

The Company reported Cash Available for Distribution ("CAD") per common share of $0.37 for the quarter ended March 31, 2004, a decrease of 26% as compared with CAD per common share of $0.50 for the same period in 2003. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. CAD differs from net income because of variations between GAAP income and actual cash received. These variations are described in the note to the attached calculation of CAD statement.)

MuniMae Chairman and CEO Mark K. Joseph, commenting on the results, stated, "We are very pleased with the Company's results for the first quarter. As we had previously advised our investors, we expected first quarter results to come in below the prior-year figures due to seasonality in our tax credit equity syndication business, which we significantly expanded through a July 2003 acquisition. While our CAD per share for the first quarter of 2004 did come in below the prior-year results, it significantly exceeded our expectations. This was largely due to strong results in our tax credit equity unit during the quarter. Based in part on the Company's results and our outlook for the remainder of the year, our Board of Directors recently raised the quarterly distribution to holders of our common shares to $0.4575, an increase of 3% over the same period in 2003 . . . ."

34.     The statements made by defendants and contained in the Company's May 3, 2004 release were materially false and misleading when made.

### Materially False And Misleading Statements Contained In
### The Secondary Offering Prospectus And Registration Statement

35.     On or about February 3, 2005, MuniMae conducted its Secondary Offering of 2.575 million shares of common stock priced at $26.51 each. In addition, the Underwriters also received a 30-day option to purchase up to an additional 386,250 shares of common stock from the Company to cover over-allotments. The MuniMae Secondary Offering was conducted primarily by lead underwriters, Merrill Lynch and RBC Capital. In connection with this Offering, Underwriters received gross proceeds of over $3.728 million.

36.     In connection with the February 2005 Secondary Offering, on February 3, 2005, defendants also filed with the SEC, pursuant to Form 424B5, a copy of a Registration Statement and Prospectus. In addition to describing the terms and conditions of the Secondary Offering itself, this Registration Statement and Prospectus contained statements that attested to the

financial strength and well being of the Company, as well as statements concerning MuniMae's management systems, and/or its accounting and auditing controls, procedures and policies. As evidence of the foregoing, the Secondary Offering Registration Statement incorporated, by reference, the same materially false and misleading financial and operational information contained in the Company's interim quarterly reports for the quarters ended March 31, 2004, June 30, 2004 and September 30, 2004.

37.    The statements made by defendants and contained in and/or incorporated by reference into the Company's Secondary Offering Registration Statement and Prospectus, filed with the SEC on or about February 3, 2005, were each materially false and misleading when made, and omitted to disclose material information necessary to make the statements contained therein to be true, accurate and reliable, for the following reasons, among others:

(a)    At the time of the Secondary Offering, it was not true that the Company's purported success was the result of its integration of acquisitions and/or defendants' competent management;

(b)    At the time of the Secondary Offering, it was also not true that MuniMae contained adequate systems of internal operational or financial controls, such that MuniMae's reported financial statements were true, accurate or reliable; and

(c)    As a result of the foregoing, at the time of the Secondary Offering, it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP and/or SEC rules.

38.    As a result of the aforementioned adverse conditions which defendants failed to disclose, at the time of the Secondary Offering, MuniMae was not operating according to plan, and MuniMae could not achieve guidance sponsored and/or endorsed by defendants.

## Defendants' Additional Materially False and Misleading
## Statements Made During the Class Period

39.     In addition to the materially false and misleading statements contained in the Company's Secondary Offering Registration Statement and Prospectus, during the remainder of the Class Period, defendants continued to publish other statements that they knew or recklessly disregarded were materially false and misleading at the time of such publication.   As further evidence of the foregoing, when defendants reported results for the fourth quarter and year end 2004, defendants again published a release, dated March 16, 2005, that purported to report the financial health and stability of the Company, in part, as follows:

**MuniMae Reports Fourth Quarter and Year-End Financial Results; 9% Increase in Cash Available for Distribution Per Common Share**

MuniMae (the "Company") today announced financial results for its fourth quarter and year ended December 31, 2004.

"By capitalizing on the synergies between our tax credit business and our tax-exempt and taxable lending businesses, we successfully structured over $2.5 billion in multifamily and other real estate investments, which is a 68% increase over 2003 production," commented Michael Falcone, Chief Executive Officer of MuniMae.  He added, "As a result, our Cash Available for Distribution ("CAD") per common share grew 9% over 2003, representing our 8th consecutive year of CAD per share growth."

GAAP Results of Operations

As previously reported, the Company adopted FASB Interpretation No. 46R, "Consolidation of Variable Interest Entities" effective March 31, 2004, which required us to consolidate certain tax credit equity funds in which we have a 1% or less general partnership interest. As a result of consolidating these funds, syndication and certain other fees earned on these funds have been eliminated. These changes, coupled with financing accounting required for guaranteed tax credit equity funds, make the year over year comparisons difficult. Accordingly, we have presented adjusted amounts in an effort to improve comparability as between 2004 and 2003. These amounts are not in accordance with generally accepted accounting principles. It should be noted that, due to other significant changes in the Company's business and other new accounting principles, even these adjusted figures are not fully comparable.

For the three and twelve months ended December 31, 2004, net income of approximately $5.6 million and $27.0 million, respectively, down from $9.3 million and $72.5 million for the three and twelve months ended December 31, 2003, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, MuniMae net income of $21.8 million and $61.1 million for the three and twelve months ended December 31, 2004, respectively, representing an increase of approximately 55% over similarly adjusted GAAP net income for the three months ended December 31, 2003 and a decrease of 17% for the twelve months ended December 31, 2003.

On a diluted per share basis, net income was $0.16 and $0.78 for the three and twelve months ended December 31, 2004, respectively, down from $0.28 and $2.44 for the three months and twelve months ended December 31, 2003, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, diluted net income per common share was $0.62 and $1.76 for the three months and twelve months ended December 21, 2004, respectively, which represents an increase of 44% from the similarly adjusted $0.43 per share for the three months ended December 31, 2003 and a 29% decrease from the $2.47 per share for the twelve months ended December 31, 2003 . . . .

40.     The statements made by defendants and contained in the Company's March 16, 2005 release were materially false and misleading when made.

41.     Later, on April 11, 2006, when defendants filed with the SEC, pursuant to Form 8-K, a copy of the Company's press release that announced results for the fourth quarter and year end December 31, 2005, defendants again reported purported "strong performance," stating in part, the following:

**MuniMae Reports Financial Results**

BALTIMORE – MuniMae (NYSE: MMA) today announced unaudited financial results for the fourth quarter and full year 2005. Net earnings were $16.1 million ($.42 per diluted share) for the three months ended December 31, 2005, as compared to $17.1 million ($.48 per diluted share) for the fourth quarter of 2004, as restated. For the full year, net earnings were $85.8 million ($2.24 per diluted share) in 2005, as compared to $50.9 million ($1.46 per diluted share) in 2004, as restated. Cash available for distribution (CAD) was $29.8 million for the quarter and $95.7 million for the year ended December 31, 2005, an increase of 34% and 17%, respectively over the comparable amounts for 2004. On a per share basis, CAD was $.78 for the three months ended December 31, 2005, an increase of

24% over the fourth quarter of 2004. For the full year, CAD per share was a record $2.51, an increase of 8% over 2004 results. A reconciliation of CAD to net earnings is included in the accompanying financial table. The financial results described above are subject to the completion of the audit by the Company's independent registered public accountants, and are therefore subject to change.

2005 Highlights

* Closed $77 million of acquisitions.

* Originated $3.8 billion of new investments, an increase of $1.2 billion and 49% ahead of 2004 production.

* Increased tax credit equity syndications 15% to $1.3 billion making MuniMae the largest sponsor of tax credit equity investments in the United States.

* Generated $135 million of fee revenue (on a CAD basis), a 28% increase over 2004.

* Raised more than $250 million of capital through balanced issuances of common stock and preferred shares.

In recognition of these outstanding achievements, the Company's Board of Directors approved the 36th consecutive increase in the quarterly distribution that was paid to shareholders on February 10, 2006. The distribution of $.4925 per share represents a 4% increase from the comparable distribution last year. On an annualized basis, the distribution equates to $1.97 per common share and represents a 7.5% yield based on the April 10, 2006 closing price of $26.35 per share. The stated yield does not give effect to any tax savings investors may realize from the portion of the distribution that is exempt from Federal income taxes.

Commenting on the Company's strong performance, Michael L. Falcone, Chief Executive Officer stated, "We accomplished a great deal in 2005. We closed the acquisitions of MONY Realty Capital and Glaser Financial which significantly expanded the mortgage banking products we offer as well as the services we can provide to institutional investors. In addition, we reorganized our operations to improve profitability and client service for many years to come. With greater diversity of revenue sources, a more efficient operating platform and a distribution that represents a lower percentage of CAD, MuniMae is well positioned for continued growth over the long-term . . . ."

42.    On June 22, 2006, when MuniMae filed with the SEC, the Company's 2005 year end results, for the period ended December 31, 2005, the Company's Form 10-K contained many

of the same, or similar, reports of financial results and operations as had been published previously by defendants. In addition, the 2005 Form 10-K also contained Certifications by defendants Falcone and Lundquist that attested to the purported transparency and accuracy of these reports. These Certifications stated, in part, the following:

## CERTIFICATIONS

1.      I have reviewed this annual report on Form 10-K of Municipal Mortgage & Equity, LLC;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and we have:

         (a)      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

         (b)      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

         (c)      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: June 22, 2006
/s/   Michael L. Falcone
Michael L. Falcone
Chief Executive Officer, President and Director

**CERTIFICATION PURSUANT TO 18 U.S.C SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Annual Report of Municipal Mortgage & Equity, LLC, a Delaware limited liability company (the "Company"), on Form 10-K for the period ended December 31, 2005 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Michael L. Falcone, President, Chief Executive Officer and Director of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: June 22, 2006
/s/   Michael L. Falcone
Michael L. Falcone
Chief Executive Officer, President and Director

17

## CERTIFICATION PURSUANT TO 18 U.S.C SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the Annual Report of Municipal Mortgage & Equity, LLC, a Delaware limited liability company (the "Company"), on Form 10-K for the period ended December 31, 2005 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Melanie M. Lundquist, Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: June 22, 2006
/s/    Melanie M. Lundquist
Melanie M. Lundquist
Chief Financial Officer

43.     The statements made by defendants and/or the Certifications contained in the Company's April 11, 2006 and June 22, 2006 SEC Filings, filed pursuant to Form 8-K and Form 10-K, were each materially false and misleading when made.

44.     When the Company reported preliminary results for year end 2006, on or about January 31, 2007, defendants again highlighted MuniMae's purported strength and profitability. As evidence of this, the Company's release, published that day, also stated, in part, the following:

**MuniMae Announces 40th Consecutive Increase in Quarterly Distribution; Company Provides Year End Review for 2006**

Municipal Mortgage & Equity, LLC ("MuniMae," NYSE:MMA) announced today that its Board of Directors declared a distribution of $0.5125 per common share payable on February 20, 2007 to shareholders of record as of February 7, 2007. This represents a 4% increase over the distribution for the comparable period last year. On an annualized basis, the distribution equates to $2.05 per common share and represents a 6.5% yield based on the January 30, 2007 closing price of $31.44 per share. Because a portion of income allocated to shareholders

may qualify for exemption from Federal income taxes, the stated yield does not reflect potentially higher net returns investors may realize as compared with other investments.

MuniMae also provided a review of the Company's business performance for the year ended December31, 2006 as well as that of its significant operating subsidiaries and certain other activities. Michael L. Falcone, Chief Executive Officer, stated, "The past year was a good one for MuniMae. We are pleased with our production volume during the year, particularly commercial real estate financings." Mr. Falcone continued, "We are very pleased with the value created for shareholders in 2006 - generating a total return of better than 30%. However, this good news is mitigated by our inability to file our consolidated financial statements in a timely manner. We remain strongly committed to completing our restatement efforts and are working hard to do so." The 2006 total return is based on cash distributions paid to shareholders and share price appreciation during the year. The restatement effort is not expected to impact the Company's cash flow. The information in this release is based on preliminary results and is subject to change as the Company completes its closing process and its independent registered public accounting firm completes its audit of the Company's consolidated financial statements.

2006 Highlights

* Increased cash distributions paid to shareholders during the year ended December 31, 2006 to $2.00 per share, a 4.2% increase from the $1.92 paid during the year ended December 31, 2005,

* Originated $3.5 billion of new investments, and at December 31, 2006, managed a portfolio of more than $18 billion in assets,

* Completed a strategic reorganization effort early in the year which positions MuniMae to better serve its clients and offer additional services and investment opportunities,

* Sponsored $1.2 billion of tax credit equity investments in affordable housing projects, including a single fund with commitments for more than $500 million which represents the largest affordable housing tax credit equity fund ever syndicated in the United States,

* Expanded MuniMae's core competency of tax-advantaged investing and its offering of socially responsible investment opportunities with the acquisition of Renewable Ventures LLC, which arranges debt and equity financing for developers and owners of clean energy generation facilities,

* Originated $1.8 billion of investments in commercial real estate financings, and

\*      Completed a $192 million fixed rate bond securitization with the private placement, by a MuniMae subsidiary, of certificates that bear interest at 4.26% per annum and have an initial term of seven years . . . .

45.      Defendants' publication of materially false and misleading statements continued throughout the Class Period. In fact, as late as mid- December 2007, defendant again published a statement designed to condition investors to believe that no material adverse events or conditions had occurred at the Company. As further evidence of this, on December 13, 2007, defendants published a release that stated, in part, the following:

**MuniMae Provides Comment Regarding Stock Performance**

BALTIMORE--(BUSINESS WIRE)--Municipal Mortgage & Equity, LLC (MuniMae, NYSE:MMA) has been asked by its shareholders to comment on the recent market activity of the Company's stock. Management of the Company is not aware of any pending transaction or event that might give rise to the recent volatility in the Company's stock price. In addition, management wants to reiterate that the Company is not engaged in sub-prime or any other single family mortgage lending activities . . . .

46.      The statements made by defendants and contained in the Company's January 31, 2007 and December 13, 2007 press releases, as well as those other statements made by defendants during the Class Period, and contained in MuniMae's press release and SEC filings, were each materially false and misleading when made for at least the following reasons:

(a)      At all times during the Class Period, it was not true that the Company's purported success was the result of its integration of acquisitions or defendants' competent management when, in fact, throughout the Class Period, MuniMae's results were inflated by manipulation of its accounting for operations, revenues and income;

(b)      At all times during the Class Period, unbeknownst to investors, MuniMae's profitability was materially overstated and MuniMae failed to properly account for

20

the Company's true costs of operations, which artificially inflating the Company's financial results, gross margins and net income;

(c)     Throughout the Class Period, it was also not true that MuniMae contained adequate systems of internal operational or financial controls, such that MuniMae's reported financial statements were true, accurate or reliable;

(d)     As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP and/or SEC rules; and

(e)     As a result of the aforementioned adverse conditions which were not disclosed throughout the Class Period, contrary to the defendants public statements, MuniMae was not operating according to plan, and could not achieve guidance sponsored and/or endorsed by defendants.

### The True Financial And Operational Condition of MuniMae Is Belatedly Disclosed

47.     It was only on January 29, 2008, following the close of trading, that investors learned the true, impaired condition of the Company, after defendants shocked and alarmed the market by announcing, for the first time, that MuniMae was performing well below expectations and required a restatement charge in the near term – rending its prior reported financial statements and reports untrue and unreliable.

48.     Accordingly, following this announcement, as shares traded in the after-market, MuniMae stock plunged over 47% – or over $8.00 per share.  In addition to stating that MuniMae would restate its financial results as far back as 2004, at that time defendants also revealed that the Company would be forced to cut its dividend and that its shares would likely be delisted from trading on the NYSE.  On this news, shares of the Company fell to $9.19.  The

following day, January 30, as shares of MuniMae resumed trading in normal session trading, shares of the Company fell, additionally, to trade around or below $7.00 per share – well below the Company's prior 52-week trading low.

## Violations of GAAP AND SEC Reporting Rules

49.     During the Class period, defendants represented that MuniMae's financial statements reflecting its financial performance, accounting, reporting, and financial condition were in accordance with the federal securities laws and GAAP.  These statements were untrue.

50.     GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R.  210.4-01(a)(1), provides that financial statements filed with the SEC which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate.  SEC Rule 13a-13 requires issuers to file quarterly reports.

51.     SEC Rule 12b-20 requires that periodic reports contain such further information as is necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

52.     In addition, Item 303 of Regulation S-K requires that, for interim periods, the Management Division and Analysis Section ("MD&A") must include, among other things, a discussion of any material changes in the registrant's results of operations with respect to the most recent fiscal year-to-date period for which an income statement is provided.  Instructions to Item 303 require that the this discussion identify any significant elements of registrant's income or loss from continuing operations that are not necessarily representative of the registrant's

ongoing business. Item 303(a)(3)(ii) to Regulation S-K requires the following discussion in the

MD&A of a company's publicly filed reports with the SEC:

> Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or inventory adjustments), the change in relationship shall be disclosed.

Paragraph 3 of the Instructions to Item 303 states in relevant part:

> The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. This would include descriptions and amounts of . . . matters that would have an impact on future operations and have not had an impact in the past . . . .

53.     The GAAP requirement for recognition of an adequate provision for foreseeable

costs and an associated allowance applies to interim financial statements as required by

Accounting Principles Board Opinion No. 28.  Paragraph 17 of this authoritative pronouncement

states that:

> The amounts of certain costs and expenses are frequently subjected to year-end adjustments even though they can be reasonably approximated at interim dates. To the extent possible such adjustments should be estimated and the estimated costs and expenses assigned to interim periods so that the interim periods bear a reasonable portion of the anticipated annual amount.

54.     The Company's financial statements contained in its year end and quarterly

reports filed with the SEC pursuant to Forms 10-Q and Forms 10-K, throughout the Class Period,

were presented in a manner that violated the principle of fair financial reporting and the

following GAAP, among others:

(a)     The principle that financial reporting should provide information that is

useful to present and potential investors and creditors and other users in making rational

investment, credit and similar decisions (FASB Statement of Concepts No. 1).

(b)     The principle that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Concepts No. 1).

(c)     The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2).

(d)     The principle of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2).

(e)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2).

(f)     The principle that contingencies and other uncertainties that affect the fairness of presentation of financial data at an interim date shall be disclosed in interim reports in the same manner required for annual reports (APB Opinion No. 28).

(g)     The principle that disclosures of contingencies shall be repeated in interim and annual reports until the contingencies and have been removed, resolved, or have become immaterial (APB Opinion No. 28).

(h)     The principle that management should provide commentary relating to the effects of significant events upon the interim financial results (APB Opinion No. 28).

55.    In addition, during the Class Period, defendants violated SEC disclosure rules:

(a)     defendants failed to disclose the existence of known trends, events or uncertainties that they reasonably expected would have a material, unfavorable impact on net revenues or income or that were reasonably likely to result in the Company's liquidity decreasing in a material way, in violation of Item 303 of Regulation S-K under the federal securities laws

(17 C.F.R. 229.303), and that failure to disclose the information rendered the statements that were made during the Class Period materially false and misleading; and

(b)     by failing to file financial statements with the SEC that conformed to the requirements of GAAP, such financial statements were presumptively misleading and inaccurate pursuant to Regulation S-X, 17 C.F.R. 210.4-01(a)(1).

56.     Defendants were required to disclose, in the Company's financial statements, the existence of the material facts described herein and to appropriately recognize and report assets, revenues, and expenses in conformity with GAAP.   The Company failed to make such disclosures and to account for and to report its financial statements in conformity with GAAP. As a result, the Company's year-end and interim financial statements, press releases, public statements, and filings with the SEC, which were disseminated to the investing public during the Class Period, were materially false and misleading for the reasons set forth herein.  Had the true financial position and results of operations of the Company been disclosed during the Class period, the Company's common stock could not have been sold by the Company for the prices it was, and its publicly traded securities would not have traded at prices they did.

## Basis of Plaintiff's Allegations

57.     Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by MuniMae, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## COUNT I

### (Against All Defendants)
### For Violation of Section 11 of the Securities Act

58.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 57 above, as if set forth herein.

59.     This Count sounds in negligence and does *not* allege fraud, scienter or the intent of the defendants to defraud plaintiff or members of the Class.  This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Registration Statement and Prospectuses for Company shares issued to the public, including sold pursuant to the Company's February 3, 2005 Secondary Public Offering and through the Company's dividend reinvestment plan.

60.     MuniMae is the issuer of the stock issued via the false Registration Statements and Prospectuses.  As such, MuniMae is strictly liable for each false and misleading statements contained therein.

61.     The defendants identified herein, *supra*, are each signatories of the Registration Statement or Underwriters of the one or more of those Registration Statements (or otherwise responsible) and, therefore, each of these defendants had a duty to make a reasonable investigation of the statements contained in the Registration Statements and Prospectuses to ensure that said statements were true and that there was no omission to state any material fact required to be stated in order to make the statements contained therein not misleading.  In the exercise of reasonable care, defendants should have known of the material misstatements and omissions contained in the Registration Statements and Prospectuses and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  As such, each of these defendants are liable to plaintiff and/or the Class.

62.     Each of the defendants identified in Count I issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public which were contained in the Registration Statements and Prospectuses which misrepresented or failed to disclose, *inter alia*, the facts set forth above.

63.     By reasons of the conduct alleged herein, each defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

64.     As a direct and proximate result of defendants' wrongful conduct, the price for the MuniMae common stock sold pursuant to such Registration Statements and Prospectuses would not have been paid by Class members if the truth were known, and plaintiff and/or the Class suffered substantial damages in connection with their purchase of MuniMae common stock.

65.     Plaintiff and/or other members of the Class acquired their MuniMae stock without knowledge of the untruths and/or omissions alleged herein. Plaintiff and/or the other members of the Class were thus damaged by defendants' violations of Section 11 of the Securities Act.

66.     This action was brought within one year after the discovery of the untrue statements and omissions and within three years after the sale of the subject shares pursuant to a false Registration Statement and Prospectus.

## COUNT II

### (Against The Individual Defendants)
### For Violation of Section 15 of the Securities Act

67.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 66 above as if set forth herein. This Count is asserted against the Individual Defendants. This count is predicated upon defendants strict liability for making false and materially misleading statements in the Registration Statement and Prospectuses for Company

shares issued to the public, including sold pursuant to the Company's February 3, 2005 Secondary Public Offering and through the Company's dividend reinvestment plan.

68.    Throughout the Class Period, the Individual Defendants acted as controlling persons of MuniMae within the meaning of Section 15 of the Securities Act. By reason of their stock ownership, senior management positions and/or directorships at the Company, as alleged above, these defendants, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause MuniMae to engage in the unlawful acts and conduct complained of herein.

69.    By reason of such conduct, the defendants named in this Count are liable pursuant to Section 15 of the Securities Act. As a direct and proximate result of their wrongful conduct, plaintiffs and the Class suffered damages in connection with their acquisition of MuniMae common stock.

## COUNT III

### (Against All Defendants)
### Violation of Section 12(a)(2) of the Securities Act

70.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69 above as though set firth herein. This Count is brought against all defendants.

71.    This Count is brought by plaintiff pursuant to Section 12(a)(2) of the Securities Act on behalf of all purchasers of MuniMae shares in connection with the public offering of those share by MuniMae. This cause of action is brought against all defendants. This count is predicated upon defendants strict liability for making false and materially misleading statements in the Registration Statement and Prospectuses for Company shares issued to the public,

including sold pursuant to the Company's February 3, 2005 Secondary Public Offering and through the Company's dividend reinvestment plan.

72.    Defendants were sellers, offerors, underwriters and/or solicitors of sales of the MuniMae shares offered pursuant Registration Statements and Prospectuses.

73.    The MuniMae Registration Statements and Prospectuses contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectuses and Registration Statements.

74.    The defendants owed to the purchasers of MuniMae shares which were sold in the public offering of MuniMae shares the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses and Registration Statements, to insure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

75.    Plaintiff and/or other members of the Class purchased or otherwise acquired MuniMae shares pursuant to the defective Prospectuses and Registration Statements.  Plaintiff and the member of the Class did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectuses and Registration Statements.

76.    Plaintiff, individually and representatively, hereby offer to tender to defendants those securities which plaintiff and/or other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon.

77.     By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, Section 12(a)(2) of the Securities Act.  Accordingly, plaintiff and/or members of the Class who hold MuniMae shares purchased from MuniMae have the right to rescind and recover the consideration paid for their MuniMae shares and, hereby elect to rescind and tender their MuniMae shares to the defendants sued herein.  Plaintiff and/or Class members who have sold their MuniMae shares are entitled to rescissory damages.

78.     Less than three years elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action.  Less than one year elapsed from the time when plaintiff discovered or reasonably could have discovered the facts upon which this Count is based to the time of the filing of this action.

## COUNT IV

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

79.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 57 above as if fully set forth herein.

80.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public regarding MuniMae's business, operations, management and the intrinsic value of MuniMae common stock; (ii) enable defendants to artificially inflate the price of MuniMae shares; (iii) enable defendants to register for sale with the SEC, and then sell over $65 million of Company stock in connection with the February 2005 Secondary Offering; and (iv) cause plaintiff and other members of the Class to purchase MuniMae common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

81.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for MuniMae's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

82.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of MuniMae as specified herein.

83.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of MuniMae's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about MuniMae and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of MuniMae common stock during the Class Period.

84.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives

31

and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

85.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts.    Such defendants' material misrepresentations and/or omissions were done knowingly or with recklessly for the purpose and effect of concealing MuniMae's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by recklessly refraining from taking those steps necessary to discover whether those statements were false or misleading.

86.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of MuniMae common

stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of MuniMae's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired MuniMae common stock during the Class Period at artificially high prices and were damaged thereby.

87.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that MuniMae was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their MuniMae common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

88.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

89.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

90.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated MuniMae's stock price and operated as a fraud or deceit on Class Period purchasers of MuniMae's stock by misrepresenting

the Company's financial results.   Over a period of almost four years, defendants improperly inflated the Company's financial results.   Ultimately, however, when defendants' prior misrepresentations and fraudulent conduct came to be revealed and was apparent to investors, shares of MuniMae declined precipitously – evidence that the prior artificial inflation in the price of MuniMae's shares was eradicated.   As a result of their purchases of MuniMae stock during the Class Period, plaintiff and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

### Causation and Economic Loss Under Section 10(b)

91.    By improperly characterizing the Company's financial results and misrepresenting its prospects, the defendants presented a misleading image of MuniMae's business and future growth prospects.   During the Class Period, defendants repeatedly emphasized the ability of the Company to monitor and control expenses, and consistently reported expenses and expense ratios within expectations and within the range for which the Company was adequately reserved. These claims caused and maintained the artificial inflation in MuniMae's stock price throughout the Class Period and until the truth about the Company was ultimately revealed to investors.

92.    Defendants' false and materially misleading statements had the intended effect of causing MuniMae's shares to trade at artificially inflated levels throughout the Class Period – reaching a Class Period high of almost $32.50 per share in late 2006 / early 2007.

93.    On January 29, 2008, however, as investors learned the truth about the Company, and learned that defendants had failed to properly report the Company's financial and operational results, shares of the Company collapsed.   Defendants' belated disclosures had an immediate, adverse impact on the price of MuniMae shares.

94.     These belated revelations also evidenced defendants' prior falsification of MuniMae's business prospects due to defendants' false statements.  As investors and the market ultimately learned, the Company's prior business prospects had been overstated as were the Company's results of operations.  As this adverse information became known to investors, the prior artificial inflation began to be eliminated from MuniMae's share price and were damaged as a result of the related share price decline.

95.     As a direct result of investors learning the truth about the Company on January 29, 2008, shares of the Company fell over $8.00 each, or 47%, to $9.19. The following day, January 30, as shares of MuniMae resumed trading in normal session trading, shares of the Company fell, additionally, to trade around or below $7.00 per share – well below the Company's prior 52-week trading low.

96.     The decline in MuniMae's stock price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud being revealed to investors and to the market. The timing and magnitude of MuniMae's stock price decline negates any inference that the losses suffered by plaintiff and the other members of the Class were caused by changed market conditions, macroeconomic or industry factors or even Company-specific facts unrelated to defendants' fraudulent conduct.  During the same period in which MuniMae's share price fell over 60% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

97.     The economic loss, *i.e.* damages suffered by plaintiff and other members of the Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of MuniMae's stock and the subsequent significant decline in the value of the Company's shares when defendants' prior misstatements and other fraudulent conduct was revealed.  The dramatic

decline in the price of Company shares immediately following defendants' belated disclosure is evidenced, in part, by the chart below:



MUNICIPAL MORTGAGE & EQUITY
as of 30-Jan-2008
Copyright 2008 Yahoo! Inc.                                        http://finance.yahoo.com/

## Additional *Scienter* Allegations

98.     As alleged herein, defendants acted with *scienter* in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding MuniMae, their control over, and/or receipt and/or modification of MuniMae's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning MuniMae, participated in the fraudulent scheme alleged herein.

99.     Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because:   (i) it deceived the investing public

36

regarding MuniMae's business, operations, management and the intrinsic value of MuniMae common stock; (ii) it enabled defendants to artificially inflate the price of MuniMae shares; (iii) it enabled defendants to register for sale with the SEC, and then sell over $78.486 million of Company stock in connection with the February 2005 Secondary Offering; and (iv) it caused plaintiff and other members of the Class to purchase MuniMae common stock at artificially inflated prices.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

100.    At all relevant times, the market for MuniMae's common stock was an efficient market for the following reasons, among others:

(a)    MuniMae's stock met the requirements for listing, and was listed and actively traded on the NYSE national market exchange, a highly efficient and automated market;

(b)    As a regulated issuer, MuniMae filed periodic public reports with the SEC and the NYSE;

(c)    MuniMae regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    MuniMae was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

101.    As a result of the foregoing, the market for MuniMae securities promptly digested current information regarding MuniMae from all publicly available sources and reflected such information in MuniMae stock price. Under these circumstances, all purchasers of MuniMae common stock during the Class Period suffered similar injury through their purchase of MuniMae common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

102.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of MuniMae who knew that those statements were false when made.

## COUNT V

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

103.   Plaintiff repeats and realleges each and every allegation contained paragraphs 1 through 57 and 79 through 102 above as if fully set forth herein.

104.   The Individual Defendants acted as controlling persons of MuniMae within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

105.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

106.   Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MuniMae common stock during the class period by disseminating materially false and misleading statements and/or concealing

material adverse facts.  The scheme: (i) deceived the investing public regarding MuniMae's business, operations, management and the intrinsic value of MuniMae common stock; (ii) enabled defendants to artificially inflate the price of MuniMae shares; (iii) enabled defendants to register for sale with the SEC, and then sell over $65 million of Company stock in connection with the February 2005 Secondary Offering; and (iv) caused plaintiff and other members of the Class to purchase MuniMae common stock at artificially inflated prices.

107.    As set forth above, MuniMae and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: April 21, 2008


**BROWER PIVEN**
A Professional Corporation


_____ /s/  Charles J. Piven _____
Charles J. Piven - 00967
World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

**BROWER PIVEN**
A Professional Corporation
David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

**KAHN GAUTHIER SWICK, LLC**
Kim E. Miller
12 East 41st Street
New York, NY 10017
Telephone: (212) 696 - 3730
Facsimile:  (504) 455-1498

41

**KAHN GAUTHIER SWICK, LLC**
Lewis Kahn
650 Poydras Street - Suite 2150
New Orleans, LA  70130
Telephone: (504) 455-1400
Facsimile:  (504) 455-1498

*Attorneys for Plaintiff Engel*